UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BAYLOR HEALTH CARE SYSTEM, BAYLOR UNIVERSITY MEDICAL CENTER, and BAYLOR HEART AND VASCULAR HOSPITAL, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:09-CV-1019-B |
| INSURERS ADMINISTRATIVE CORPORATION, | § § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs Baylor Health Care System, Baylor Heart and Vascular Hospital, and Baylor University Medical Center's Motion for Summary Judgment (doc. 31) and Defendant Insurers Administrative Corporation's Motion for Summary Judgment (doc. 34). For the reasons discussed below, the Court finds that Plaintiffs' Motion for Summary Judgment should be **GRANTED IN PART** and **DENIED IN PART**, and that Defendant's Motion for Summary Judgment should be **DENIED.**

I.

BACKGROUND[1]

This is a breach of contract action arising from Defendant's alleged failure to pay four health

---

[1] The background facts are derived from undisputed facts gleaned from the parties' court papers. Where there may be a dispute over a stated fact the Court has so indicated by claiming the fact as one stated by that party to be true.

- 1 -

care claims within the contractual payment period. Plaintiffs Baylor Health Care System, Baylor Heart and Vascular Hospital, and Baylor University Medical Center ("Baylor") provide health care services in the Dallas-Fort Worth area. (Original Compl.¶ 6). Defendant Insurers Administrative Corporation ("IAC") is a third-party administrator that receives, reviews, and pays claims on behalf of employers and insurers. (Original Compl.¶ 8). Nonparty Private Health Care Systems ("PHCS") operates a Preferred Provider Plan network that secures reduced health care services rates for its subscribers. (Original Compl.¶ 7). PHCS's subscribers include entities such as insurance companies, employer health plans, and third-party administrators as well as hospitals and physicians. (*Id*.).

In January 2002, Plaintiffs and PHCS entered into a Hospital Services Agreement in which Plaintiffs agreed to provide services at reduced rates to PHCS's subscribers, labeled "Payors" under the Hospital Services Agreement. (Original Compl.¶¶ 9, 11). PHCS contracted with IAC through a Subscriber Services Agreement. (Pl.'s Mot. Summ. J. 5). As part of the Subscriber Services Agreement, IAC was required to sign a Payor Acknowledgment form contractually binding the Payor to pay claims within 45 days of receipt of any claim. (Original Compl.¶ 11). If a claim is not properly paid, the Payor loses eligibility for reduced rates and must pay the regular higher rates. (*Id*.). Plaintiffs allege that Defendant became a Payor upon signing a Payor Acknowledgment form with PHCS on August 31, 1999. (Original Compl.¶¶ 10-12). As a result, Plaintiffs maintain that Defendant was required to pay claims within the payment period. (Original Compl.¶¶ 12, 13). The Hospital Services Agreement, Subscriber Services Agreement, and Payor Acknowledgment are collectively referred to as the Tripartite Agreement.

The relevant provisions of the Tripartite Agreement are as follows:

**Hospital Services Agreement, Article I, Definitions**
A "payor" is "an insurance company, employer health plan, Taft Hartley fund, plan sponsor or other similarly situated entities or organizations which are obligated (directly or through its designee) to pay for Covered Services for members in accordance with such Health Plans."
(App. to Pl.'s Mot. Summ. J. 2).

**Hospital Services Agreement § 2.2**
"PHCS represents and warrants that it has entered into Payor Acknowledgments with Payor for the use of the PHCS provider network....Each Payor Acknowledgment between PHCS and a Payor will obligate the Payor (or its designee) to comply with the duties and obligations of this Agreement, including, but not limited to, paying for Covered Services rendered to Members in accordance with the provisions of Article IV of this Agreement. PHCS...will not be liable for any payment of claims...".
(App. to Pl.'s Mot. Summ. J. 3).

**Hospital Services Agreement §4.4(a)**
"If Payor (directly or through its designee) does not pay within forty-five (45) days of receipt of a Clean Claim, Payor shall no longer be eligible for the [discounted rates] and shall be obligated to pay Hospital at Hospital's Normal Billed charges."
(App. to Pl.'s Mot. Summ. J. 12-13).

**Payor Acknowledgment, November 1, 2000**
"Payor agrees to pay or arrange to pay PHCS Preferred Providers in accordance with the PHCS Preferred Provider Agreement."
(App. to Pl.'s Mot. Summ. J. 74).

There are four claims remaining to be resolved in this case. IAC received the J.E. claim on September 28, 2007. (App. to Pl.'s Mot. Summ. J. 131). Baylor received a check for the contractually discounted amount 62 days later on November 29, 2007. (*Id.*). The difference between the contractually discounted amount and the Normal Billed Charges amount on the J.E. claim is $3,475.27. (*Id.*). IAC received the J.M. claim on February 2, 2007. (*Id.*) Baylor received a check for the contractually discounted amount 59 days later, on April 2, 2007. (*Id.*) The difference between the contractually discounted amount and the Normal Billed Charges amount on the J.M. claim is $42,212.63. (*Id.*). IAC received the D.R. claim on July 25, 2006. (*Id.*). Baylor received a

check for the contractually discounted amount 155 days later, on December 27, 2006. (*Id.*). The difference between the contractually discounted amount and the Normal Billed Charges amount on the D.R. claim is $6,192.68. (*Id.*). IAC received the J.Y. claim on March 7, 2008. (*Id.*). Baylor received a check for the contractually discounted amount 75 days later on May 21, 2008. (*Id.*). The difference between the contractually discounted amount and the Normal Billed Charges amount on the J.Y. claim is $4,853.18. (*Id.*).

Baylor asserts that because each of these payments was received more than 45 days after IAC received the claim, IAC owed the Normal Billed Charges amount, and not the contractually discounted amount. (Pl.'s Br. Mot. Summ. J. 13-14). The total difference between the Normal Billed Charges amount and the contractually discounted amount on these four claims is $56,733.76. (App to Pl.'s Br. Mot. Summ. J. 131).

Baylor filed its Motion for Summary Judgment on August 2, 2010, arguing it is entitled to damages for breach of contract as a matter of law. IAC filed its own Motion for Summary Judgment on August 2, 2010. IAC argues there is a genuine issue of material fact as to its obligations under the Tripartite Agreement, and that the Tripartite Agreement contains an unenforceable liquidated damages clause. Both motions being ripe, the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARD

Summary judgment is appropriate where the pleadings and record evidence show no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. FED. R. CIV. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify

which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The movant bears the burden of proving no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Where the non-movant bears the burden of proof at trial, the movant need not support its motion with evidence negating the non-movant's case. Instead, the movant may satisfy its burden by pointing to the absence of evidence to support an essential element of the non-movant's case. *Id*; *Little*, 37 F.3d at 1075.

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. V. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' ...by 'conclusory allegations,'...by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED. R. CIV. P. 56(e)). In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant.

### III.

### ANALYSIS

*A. Baylor's Breach of Contract Claim*

To prevail on a breach of contract claim under Texas law, Baylor must show "(1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir.2003) (citing *Renteria v. Trevino*, 79 S.W.3d

240, 242 (Tex.App.-Houston [14th Dist.] 2002, no pet.)). At the summary judgment stage, Baylor must establish that no genuine issue of material fact exists as to any of these elements when all evidence is viewed in a light most favorable to IAC. *See Latimer*, 919 F.2d 301 at 303.

The Court's role in construing a contract is to effectuate the intent of the parties. *Frost Nat'l Bank v. L & F Distribs.*, 165 S.W.3d 310, 311 (Tex. 2005). The parties agree that the Hospital Services Agreement, the Subscriber Services Agreement, and the Payor Acknowledgment should be read as a single, unified contract. *See Baylor Univ. Med. Ctr. V. Epoch Grp., L.C.*, 340 F.Supp.2d 749 ("[T]he court concludes, as a matter of law, that the Hospital Services Agreement, the Subscriber Services Agreement, and the Payor Acknowledgment, constitute a single, unified contract..."). Accordingly, the parties' objective intent is determined by examining the Tripartite Agreement as a whole, and finding the meaning a reasonably intelligent person acquainted with the operative usages and circumstances associated with the making of the contract would attach to it. *Groschke v. Gabriel*, 824 S.W.2d 607, 613 (Tex. App. Houston [14th Dist.] 1991, writ denied) (quoting *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968)).

If a contract is susceptible to two or more reasonable interpretations, it is ambiguous and a fact issue exists as to the intent of the parties. *Balandran v. SafeCo Ins. Co. Of America*, 972 S.W.2d 738, 741 (Tex. 1998). No fact issue exists where there is only one reasonable interpretation. In determining whether the contract is ambiguous, the Court must limit its analysis to the four corners of the Tripartite Agreement. *Balandran*, 972 S.W.2d 738, 745, citing *National Union Fire Ins. Co. V. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). Extrinsic evidence is only admissible where the contract is ambiguous on its face. *Id*. In their motions for summary judgment, both parties argue that theirs is the only reasonable interpretation of the agreement. The Court first must determine

whether the contract is subject to more is more than one reasonable interpretation.

This case turns on the first element of the breach of contract claim. The parties disagree as to the extent of IAC's obligations and liability under the Tripartite Agreement. It is undisputed IAC signed identical Payor Acknowledgments on November 1, 2000 and October 23, 2003 as part of the Subscriber Services Agreement with PHCS. (Pl.'s Br. Mot. Summ. J. 9-10; Def.'s Br. Resp. Pl.'s Mot. Summ. J. 5). Baylor argues that signing these agreements makes IAC a Payor as defined by the Hospital Services Agreement, and that IAC is thus bound to the payment terms and conditions negotiated between Baylor and PHCS. (Pl.'s Br. Mot. Summ. J. 9-10). IAC argues that it is a Payor's Designee, not a Payor, and that signing the Payor Acknowledgment only binds IAC to timely arrange to pay PHCS. (Def.'s Br. Resp. Pl.'s Mot. Summ. J. 4). IAC further contends that only Payors, and not designees, can ultimately be held liable for late payments. (*Id.*). The Court finds IAC's interpretation of the contract is unreasonable for the reasons discussed below.

The first line of the Payor Acknowledgment signed by IAC states that "[t]he undersigned (the 'Payor') hereby acknowledges the following obligations…as provided in the Subscriber Services Agreement between Payor and [PHCS]." (App. to Pl.'s Mot. Summ. J. 74, 77). The Payor Acknowledgment further states that to receive the discounted services offered by PHCS, the "Payor agrees to pay or arrange to pay PHCS Preferred Providers in accordance with the [Hospital Services Agreement]." (*Id.*). IAC signed two identical Payor Acknowledgments with this language, and admits that signing these acknowledgments was a necessary step in obtaining access to PHCS's preferred provider network. (Pl.'s Br. Mot. Summ. J. 10; Stadel Dep. 65:4-65:8). Additionally, Hospital Services Agreement §4.4(a) states that failure to pay claims within 45 days results in the Payor no longer being eligible for the discounted rates. (App. to Pl.'s Mot. Summ. J. 12-13). Since

IAC is the entity "eligible" for the discounted rates, IAC is responsible for ensuring timely payments. It would be unreasonable and run contrary to general principles of contract law to interpret the Tripartite Agreement as providing IAC with the benefits of PHCS's preferred provider network, but not requiring IAC to abide by the obligations explicitly referenced in the Payor Acknowledgments signed by IAC. *See, e.g., Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 74 (Tex. 2008) ("A contracting party cannot accept the benefits of a contract and disclaim its obligations.").

IAC interprets the phrase "pay or arrange to pay" in the Payor Acknowledgment, and the distinction made between "Payors" and "designees" in the Hospital Services Agreement, as relieving IAC of its obligation to pay claims within 45 days. (Def.'s Br. Resp. Pl.'s Mot. Summ. J. 6-9). IAC argues it is merely obligated to "arrange to pay" claims in a timely manner, not to actually pay them. (*Id.* at 8). IAC's arguments are only reasonable if these phrases are read in isolation. When read as a whole, the Tripartite Agreement unambiguously places final responsibility for payment on IAC. The two Payor Acknowledgments signed by IAC establish its status as a "payor." (App. to Pl.'s Mot. Summ. J. 74, 77). Additionally, Hospital Services Agreement § 2.2 explicitly relieves PHCS from liability for claim payments, instead requiring PHCS to secure Payor Acknowledgment forms from subscribers such as IAC. (App. to Pl.'s Mot. Summ. J. 3). For these reasons, IAC's textual arguments fail to raise a genuine issue of material fact as to whether a valid agreement existed requiring IAC to pay claims within 45 days in order to receive the discounted rates.

Based on the summary judgment evidence presented, the Court finds Baylor's interpretation of the Tripartite Agreement to be the only reasonable one. IAC is a "payor" obligated to ensure timely payment of claims in order to receive the contractually discounted rate for services.

It is undisputed that Baylor performed under the contract by administering health care to and submitting timely claims to IAC for the four patients whose claims are at issue. (Pl.'s Br. Mot. Summ. J. 20).

The Court must examine each claim individually to determine whether IAC breached its obligations under the Tripartite Agreement.

IAC initially received the J.Y. claim on March 7, 2008 and mailed payment for the claim 35 days later, on April 11, 2008. (Aff. Stadel ¶9). Baylor appealed the pricing after receiving IAC's payment, and a corrected claim was sent to IAC on May 2, 2008. (*Id.* at ¶10). IAC paid the adjusted amount on the claim 20 days later, on May 21, 2008. (*Id.*). The Hospital Services Agreement includes a provision making the discounted rates negotiated between Baylor and PHCS are confidential. (App. to Def.'s Mot. Summ. J. 118). Baylor points to no provision of the Tripartite Agreement holding IAC responsible for determining whether the claim was priced correctly, and given the confidential nature of the rates secured by PHCS such a provision could not possibly exist. Thus, IAC cannot be held liable for paying the amount listed on a claim where the claim is later found to be priced incorrectly. Accordingly, the Court finds that IAC is not liable for breach with respect to the J.Y. claim.

The D.R. claim was similarly appealed and repriced by Baylor. IAC initially received the D.R. claim on July 25, 2006 and paid it 25 days later on August 18, 2006. (Aff. Stadel ¶12). Baylor appealed the pricing and a corrected claim was sent to IAC on October 17, 2006. (Aff. Stadel ¶13). However, IAC failed to pay the adjusted claim amount within 45 days of October 17, 2006. (*Id.*). IAC contends it cured any breach by submitting the adjusted claim amount plus a payment penalty of $1607.96 calculated pursuant to Texas law. (Def.'s Br. Mot. Summ. J. 3; App. to Def.'s Mot.

Summ. J. 20). The calculation of a payment penalty is insufficient to cure IAC's breach. The correct measure of damages was bargained for by the parties in making the agreement. As such, IAC owes Plaintiffs the difference between the amount paid by IAC and the amount owed by IAC for paying the claim later than 45 days after receiving it.

IAC breached its obligations with respect to both the J.M. and J.E. claims. IAC waited to pay both of these claims until it received funds from the insurers, which did not happen until after 45 days had passed. (Aff. Stadel ¶¶15, 17). The Tripartite Agreement holds IAC responsible for making timely payments in order to access the discounted rates. To avoid being held liable for breach, IAC had two options. IAC could have waited to receive funds from the insurer and then sent a payment in the amount of Normal Billed Charges for the J.M. and J.E. claims, or IAC could have sent the contractually discounted payment within 45 days and sought reimbursement from the J.M.'s and J.E.'s insurers.

Baylor is seeking damages in the amount of the difference between the price of contractually discounted services and the price of Normal Billed Charges on each of the four claims. (Original Compl. ¶ 16). IAC presents evidence of Baylor's Uninsured Patient Discount to argue there is a genuine issue of material fact with respect to what constitutes "Normal Billed Charges." (Def.'s Br. Resp. Pl.'s Mot. Summ. J. 11). The Court finds this argument unpersuasive. The Uninsured Patient Discount, which offers a 35% discount on services to uninsured patients, is a charity program intended to benefit individuals without any kind of insurance coverage. (App. to Def.'s Br. Resp. Pl.'s Mot. Summ. J. 1). IAC offers no evidence the charity care prices are indicative of the actual costs of patient care. Because IAC presents no other evidence raising a genuine issue as to "Normal Billed Charges," this argument insufficient to defeat Baylor's summary judgment motion.

*B. IAC's Liquidated Damages Argument*

In its own motion for summary judgment, IAC argues the damages provision of the Hospital Services Agreement is an unenforceable liquidated damages provision. (Def.'s Br. Mot. Summ. J. 8-12). Under Texas law, a liquidated damages provision is defined as "an acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach." *Flores v. Millenium Interests, Ltd.*, 185 S.W.3d 427, 431 (Tex. 2005) citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 664 (Tex. 2005). The court finds that the Tripartite Agreement does not contain a liquidated damages provision. The Hospital Services Agreement establishes a two-tiered pricing system, but the pricing provisions are not predetermined penalties for potential breaches. (*See* App. to Pl.'s Mot. Summ. J. 12-13). Failure to pay a claim within 45 days does not constitute a breach of the agreement. Rather, it renders IAC ineligible for contractually discounted services. Failure to pay Normal Billed Charges when paying a claim outside of the 45-day window is a breach of the agreement, and the damages for such a breach are the difference between the amount contractually owed to Baylor and the amount actually paid by IAC.

Even if the court grants IAC's contention that the clause is a liquidated damages provision, it is not unenforceable. Enforceability of a liquidated damages clause is a question of law for the court to decide. *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991). Generally, parties are bound by the damages bargained for in the agreement. *Crossmark, Inc. V. Hazar*, 124 S.W.3d 422, 435 (Tex. App.--Dallas 2004). Liquidated damages provisions are enforceable where 1) the harm caused by the breach is difficult to estimate; and 2) the damages provision represents a reasonable forecast of damages at the time the contract was made. *Stewart v. Basey*, 150 Tex. 666, 670-71 (Tex. 1952). The party seeking invalidation of a liquidated damages provision bears the burden of proving the

clause is an unenforceable penalty. *Fluid Concepts v. DA Apartments Ltd.*, 159 S.W.3d 226, 231 (Tex. App.–Dallas 2005), citing *Commercial Union Insurance Co. v. La Villa Independent School District*, 779 S.W.2d 102, 106 (Tex. App.–Corpus Christi 1989, no writ.).

IAC has failed to meet its burden of proving the damages clause in the Hospital Services Agreement is an unenforceable penalty. IAC argues the harm cased by the breach is easily calculated by applying interest to the payment. (Def.'s Br. Mot. Summ. J. 9). However, simply adding interest to the late payment is an insufficient measure of Baylor's damages. As Baylor points out, the staff, resources, and other costs associated with health care claims collection are nearly impossible to calculate on a claim-by-claim basis. (Pl.'s Br. Resp. Def.'s Mot. Summ. J. 17). IAC offers no evidence establishing some means by which Baylor's out-of-pocket losses from late payments could be traced specifically to IAC's breaches and thus fails to meet the burden of proof required to invalidate the provision.

IAC also argues that the Normal Billed Charges are not a reasonable estimate of just compensation because the Normal Billed Charges amount is the same regardless of whether a payment is made soon after or substantially later than the 45-day window. (Def.'s Br. Mot. Summ. J. 9-11). The Tripartite Agreement provides for discounted rates in exchange for prompt payment. Normal Billed Charges represent the amount any person or entity would pay for services absent specially contracted discounts, and thus constitutes a reasonable estimate of just compensation where IAC has failed to fulfil its prompt payment obligation. (Pl.'s Br. Resp. Def.'s Mot. Summ. J. 18). IAC offers no evidence the Normal Billed Charges themselves are unreasonable, and so fails to meet its burden of proving the liquidated damages provision is not a reasonable estimate of just compensation. Because the damages are both difficult to calculate and a reasonable estimate of just

compensation, the Court finds the liquidated damages provision to be enforceable.

## IV.

## CONCLUSION

The court finds that as a matter of law, Baylor has established the essential elements for breach of contract claims on the D.R., J.M., and J.E. claims. IAC has failed to present summary judgment evidence raising a genuine issue of material fact on any of these claims, and thus owes the Normal Billed Charges amount for each of them. Because IAC has already sent a check for the contractually discounted amount on the J.M. and J.E. claims, the amount owed is the difference between the contractually discounted services rate and the Normal Billed Charges rate for the services provided. The amount IAC owes on the D.R. claim is the amount of the difference between the contractually discounted services amount and the Normal Billed Charges amount, less the late payment interest IAC added to its payment. Accordingly, IAC owes $42,212.63 on the J.M. claim, $3,475.27 on the J.E. claim, and $4,584.72 on the D.R. claim. (*See* App. to Pl.'s Mot. Summ. J. 131; App. to Def.'s Mot. Summ. J. 20). The summary judgment evidence establishes that IAC paid the J.Y. claim in accordance with the terms of the agreement, so IAC is not liable for breach on that claim as a matter of law.

Baylor's Motion for Summary Judgment is thus **GRANTED** with respect to the J.M. and J.E. claims. Baylor's Motion for Summary Judgment is **GRANTED IN PART** with respect to the D.R. claim. The Court **DENIES** Baylor's Motion for Summary Judgment with respect to the J.Y. claim and **DENIES** IAC's Motion for Summary Judgment. There are no issues remaining for trial.

SO ORDERED.

SIGNED December 3, 2010

                                          _____
                                          JANE J. BOYLE
                                          UNITED STATES DISTRICT JUDGE